JOHN E. WILLIAMS and Another, Plaintiffs, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY and Another, Defendants.

Supreme Court, Erie County, February 9, 1935.

*Godfrey M. Frohe*, for the plaintiffs.

*Dudley, Stowe & Sawyer* [*Roy P. Ohlin* of counsel], for the defendant John Hancock Mutual Life Insurance Company.

*William J. Macavern* [*John W. Ryan* of counsel], for the defendant H. D. Taylor Company.

MacGregor, J. The plaintiff John E. Williams, prior to 1927, was in the employ of the defendant H. D. Taylor Company. In January of that year that company took out a policy of group insurance in the defendant John Hancock Mutual Life Insurance Company, by which in consideration of the payment of the agreed premiums the insurance company insured the lives of the employees of the H. D. Taylor Company in amounts varying in accordance with the nature of their employment. By the policy the insurance company agreed to pay the amount of the insurance upon any employee, in case of death, to a beneficiary designated by the employee. The policy also contained a clause to the effect that in case any employee should furnish the company with due proof that while insured under the policy and before having attained the age of sixty, he had become wholly disabled by bodily injuries or disease and would be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the company would waive further payment of premium as to such employee, and pay in full settlement of all obligations to him under the policy, " the amount of insurance in force hereunder upon his life at the time of the receipt of due proofs of such disability," in fixed installments to be selected by the employer from the schedule contained in the policy. The clause further provided that any installments remaining unpaid at the death of the employee should be paid to the beneficiary designated

by him, and might be commuted to a lump sum on a three and one-half per cent basis. Though the policy is dated January 30, 1927, it contained a provision that after January 9, 1927, the insurance would be continued only upon employees who agree to pay a portion of the premium.

At the time of the issuance of the policy, John E. Williams was an employee in a class insured in the amount of $2,000. Subsequently and prior to the arising of the disability hereinafter described, his employment was changed so that he became a member of the class of salesmen upon which the amount of insurance was fixed by the schedule in the policy at $7,500. Subsequently and after the accident resulting in the disability the schedule was attempted to be amended by the employer and the insurance company, so as to fix the amount of insurance upon salesmen at $5,000. The plaintiff Helen F. Williams has been designated as the beneficiary under the policy.

The policy provides among other things that the insurance company should issue to the employer for delivery to each employee insured a certificate setting forth the protection to which the employee was entitled under the policy. Such a certificate was issued to Williams, signed by the insurance company, showing $2,000 as the amount of the insurance, and when he became a salesman an additional certificate was issued to him showing the increase to $7,500. He was never notified of the attempted decrease from the last mentioned sum to $5,000.

In the spring of 1931 Williams met with an accident causing an injury to his knee which subsequently developed a tubercular condition resulting in an operation and a condition which admittedly constitutes total and permanent disability within the meaning of the policy provision. On the 9th day of April, 1932, he made out a claim to the company upon the blanks furnished for that purpose for total and permanent disability. The claim was accompanied by a statement of the physician who was then attending him in which the physician states in substance that the disability is total; that he cannot say how long total disability will continue and that he believes that the disability will be permanent "partially." The plaintiff's claim is, however, definite to the effect that he was then totally and permanently disabled. Later in the same month the amount of insurance was attempted to be altered as above stated from $7,500 to $5,000. The proof of disability made out April 9, 1932, was delivered to the agent of the insurance company, Mr. Quinn, but whether before or after the attempted change in the amount of the insurance does not appear. Williams subsequently and under date of October 19,

1932, submitted another disability claim upon the forms furnished by the insurance company, in which the following question was asked, "Are you totally disabled at the present time so that you will be permanently prevented from the pursuit of any form of mental or manual labor for compensation, gain or profit whatsoever?" This was answered as follows: "Don't know." This was accompanied by the statement of his attending physician which was identical with that previously given. The insurance company was apparently not satisfied that total and permanent disability within the meaning of the policy existed for it declined to make settlement on that basis until September 6, 1933, when it took the position that the total and permanent disability existed, but that due proofs thereof had not been received until August, 1933, at which time the amount of insurance in force in respect of the plaintiff had been reduced to $5,000. The company accordingly indicated its willingness to make settlement on that basis.

As is indicated above, settlement under the disability clause is not, by the terms of the policy, to be made in a lump sum, but in installments which may be annual or monthly and may be for a period of years ranging from one year to twenty years, so that there may be no less than two annual installments nor more than two hundred and forty monthly installments, and whether the installments shall be monthly or annual and the number of years over which they shall extend are to be determined by the employer.

The employer, H. D. Taylor Company, continued to pay Williams during disability, the payments extending from October 22, 1931, and continuing to July 28, 1933, and amounting in the aggregate to $3,054.90. The employer claims that these payments were made on the faith of a promise by Williams to repay their amount to the employer out of payments to be made to him on the policy of insurance. The making of the promise is controverted by Williams, but in the view here taken it is unnecessary to decide the issue of fact thus raised and it will be assumed, without deciding, in this opinion that the promise was made. The employer has never elected as to how or in what installments settlement under the policy shall be made by the insurance company. The insurance company admits the liability, but contends that it does not exceed the amount of $5,000. The H. D. Taylor Company admits its obligation to designate the method of settlement, but claims that as a condition of being required to do so it should be given security on the insurance fund for reimbursement for its advances to the plaintiff.

The first question to be determined is the extent of the liability of the defendant insurance company. The policy provision is

quite specific and requires no construction, only interpretation. It is to the effect that the company will "pay in full settlement of all obligations to him [insured employee] under this policy the amount of insurance in force hereunder upon his life at the time of the receipt of due proofs of such disability." The question then turns upon what is meant by "the time of receipt of due proofs" of such disability. It is not questioned that when the disability occurred the amount of insurance was $7,500, but the contention of the company is apparently that the existence of the disability was not proved to its satisfaction until after the amount of the insurance had been reduced. In my opinion the question as to whether or not the insurance company is satisfied with the evidence of the disability is immaterial. The terms used in the policy contain no such requirement; the expression is "upon receipt of due proofs." Had it been intended to make the time of settlement dependent upon the attitude of the insurance company, some such expression as "upon receipt of satisfactory evidence" or its equivalent would have been appropriate. In common parlance the disability benefit claim, which is headed "proof of disability," constitutes the proofs of such disability. The expression is similar to "proof of claim" by which is understood a verified statement of the claim, and if the proofs of disability were furnished and received at a time when the insurance in force was $7,500 and as the disability having in fact existed at that time, it is not at all essential that the insurance company should have been satisfied that the disability did exist and it would not be within its province to postpone the attaching of plaintiff's claim by delaying decision in respect thereto until further evidence was submitted, nor would it be within its province by a subsequent reduction of the amount of the insurance to cut down the amount it would be required to pay in settlement when a proof of claim in proper form and in accordance with the facts had already been submitted to and received by it.

The evidence does not, however, show the date when the proof of disability dated April 9, 1932, was received by Mr. Quinn for the insurance company, and it may be that it was not received by him until after April 26, 1932, when the change in the amount of the insurance was to take effect. The evidence is clear that it was delivered to Mr. Quinn before the end of October, 1932, as shown by the letter, Exhibit 10, and the testimony of Mr. Finley, in which the insurance company expressed itself as being satisfied that total and permanent disability then existed, though it appears that the insurance company was not satisfied at the time of receiving the proof of disability that the disability did in fact

exist. It is accordingly necessary to consider the question as to whether it was within the power of the insurance company and the employer to reduce the amount of the insurance without notice to and consent of the employee.

The policy is for the term of one year from the 9th day of December, 1926, and constitutes a contract between the insurance company on the one hand, and the employer and the insured employees on the other hand, the last mentioned participating in the payment of premiums. There is no provision in the policy authorizing any change in the amount of the insurance during the term of the policy except such change as might come about by reason of the change of employment in accordance with the schedule of insurance on each life. There is, however, provision made for renewing the policy by payment of the agreed premium for a term of one year for each renewal, the premium to be based upon " the amount of insurance as renewed." It may be that under this provision the employer and the insurance company could readjust the amount of insurance upon the lives of the employees at the time of any renewal, but in my opinion it does not constitute authority for them, without the assent of the other parties to the contract, the employees, to alter the schedule rates during the continuance of the original policy or of any renewal thereof. Upon the facts in this case the policy would expire on the 9th day of December, 1927, and the renewals thereon on the ninth day of December of each succeeding year, so that there would have been a renewal in force from December 9, 1931, to December 9, 1932, by the terms of which the amount of insurance upon the life of the plaintiff was $7,500. It was while this renewal was in force and not at the expiration of a renewal term that the rider, Exhibit D, was attached to the policy for the purpose of reducing the insurance upon plaintiff's life to $5,000.

The insurance is not a gratuity offered by the employer to the employees, since the latter are required to participate in the payment of the consideration for it, namely, the premiums. The policy which expresses the terms of the contract defines the relations of the parties with some minuteness and nowhere can there be found in it any authority conferred upon the employer to alter its terms during its continuance so as to affect the rights of the insured employees thereunder. It is true the employer may affect the amount of insurance upon a given employee by changing the nature of his employment, but that would be pursuant to the terms of the policy and not in alteration of those terms, whereas

a change in the amount of insurance for any designated class would be to alter the contract without the consent of one of the contracting parties.

I, therefore, conclude that the attempted change in the amount of insurance was ineffective if made without the consent of the insured employee and could not be effective unless made at the time of a renewal term as provided for in the clause of the policy relating to renewals. Accordingly, in my opinion, the amount of insurance upon which the settlement is to be based is $7,500, and the date when the first installment became payable is the date of the receipt by the company of the proof of claim dated April 9, 1932. Inasmuch as the evidence fails to show the precise date of the receipt of the proof of disability by the insurance company, but warrants a finding that it was received at some time prior to November 1, 1932, the due date of the first installment payable under the terms of the policy should be determined as of that day.

In respect of the position of the employer, the H. D. Taylor Company, that it should not be required to designate the method of settlement except upon condition that provision be made for reimbursement for its advances, we have the following situation. The contract for reimbursement as set up in the answer of that defendant is that the employee would, from payments to be made on the policy of the insurance mentioned in the complaint, repay to it (the H. D. Taylor Company) moneys advanced for his expenses and to pay his portion of the premiums paid to keep his insurance in force prior to the filing of his proofs of total disability amounting to the sum of $3,054.90. It is to be observed that the agreement alleged is an agreement by the plaintiff employee to repay such advances from the proceeds of the insurance to be paid to him, that is to say, he is claimed to have made a promise to pay out of a particular fund, and there is nothing contained in the alleged promise from which an agreement to give the H. D. Taylor Company a lien upon the insurance fund nor an agreement to assign the same over presently or in the future can be spelled out. The agreement, if made, constitutes an obligation of the plaintiff employee to the Taylor Company enforcible at law. The courts of this State have reiterated with regularity that it is " the settled law of this state that an agreement, either by parol or in writing, to pay a debt out of a designated fund does not give an equitable lien upon the fund, or operate as an equitable assignment thereof." Two recent instances of the application of this rule so frequently reiterated by our courts are *James* v. *Alderton Dock Yards* (256 N. Y. 298) and *Matter of Title Mortgage & Guarantee Co. of Buffalo* (152 Misc. 428, at p. 432).

The claim of the Taylor Company cannot be upheld as a counterclaim because it does not tend to diminish the plaintiff's recovery. (Civ. Prac. Act, § 266.)

To comply with the demand of the H. D. Taylor Company, and impose as a condition of requiring it to elect as to the mode of settlement that the proceeds of the settlement be impounded to meet its claim would be in direct violation of section 101-d of the Insurance Law, which prohibits the subjection of a policy of group insurance or its proceeds to attachment, garnishment or other process, or to be seized, taken or appropriated or applied by any legal or equitable process, or operation of law to pay any debt or liability of such employee or his beneficiary. The impounding of the proceeds for the benefit of the employer claiming to be a creditor would be the seizure of the proceeds under equitable process, and that is prohibited by the statute.

There remains for consideration the question as to what shall be done in reference to determining the method of settlement under the policy. Under the policy, applied for by the Taylor Company, and received and accepted by it, that company has undertaken the duty to elect as to the method of settlement. It now declines to do so except upon a condition which, in my opinion, it has no right to impose. The duty which it has undertaken and which is imposed upon it by the contract of insurance is manifestly not imposed in the interests of the insurance company and cannot be considered to be in the interests of the H. D. Taylor Company, for it has no interest in the matter to be served except such as might arise from purely extraneous considerations not contemplated by the insurance contract in any way. It is, therefore, to be exercised in the interests of the insured employee and the beneficiary under the policy and partakes of the nature of a trust power and as such its exercise is imperative. It is well settled that where the trustee of a power in trust dies or becomes incapacitated or refuses to exercise the power or attempts to exercise it with *mala fides*, a court of equity will intervene and according to circumstances compel the exercise of the power or exercise it itself in accordance with the intent of the instrument by which the power is created. (*Colton* v. *Colton*, 127 U. S. 300, at pp. 320, 321.)

The court will, if necessary, appoint an officer to make investigation into the circumstances and determine the mode of exercise of the power.

I conclude that the plaintiffs are entitled to a judgment declaring that the amount of the insurance which is to be made the basis of settlement is $7,500; that the same shall be paid in installments

to the plaintiff John E. Williams, any installments remaining unpaid at his death to be paid to the plaintiff Helen F. Williams; that the first installment became due on the 1st day of November, 1932; that the claim of the H. D. Taylor Company be dismissed as not constituting an equitable lien or an equitable assignment of the amounts due and to become due under the insurance policy, but without prejudice to its enforcement by such other means as may be appropriate; that the court should in its decree determine at what times and in what installments the insurance due from the defendant insurance company should be paid, the decree to be settled on two days' notice.